**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AYESHA S. SWEATT,

                      Plaintiff,

          -against-

COMMISIONER OF SOCIAL SECURITY,

                      Defendant.

21-cv-01472 (ALC)

OPINION AND ORDER

**ANDREW L. CARTER, JR., District Judge:**

      Ayeisha Sweatt ("Plaintiff" or "Sweatt") proceeding *pro se*, brings this action to challenge the final decision of the Acting Commissioner of Social Security ("Defendant" or "Commissioner") that she did not have a disability within the meaning of the Social Security Act, 42 U.S.C. § 423 *et seq*. from February 10, 2016 through December 31, 2017. Pending before the Court is Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (ECF No. 14.) For the reasons stated below, Defendant's motion is **GRANTED**.

## BACKGROUND

### I.    Procedural History

      On October 18, 2017, Plaintiff filed an application for monthly Social Security disability insurance payments, alleging that she became disabled beginning on February 6, 2016. (R., ECF No. 10 at 82, 184–96.) The Social Security Administration ("SSA") denied her application on January 23, 2018. Plaintiff then filed a written request for a hearing before an Administrative Law Judge on March 19, 2018.

      On August 19, 2019, Administrative Law Judge Andrea Addison ("the ALJ") held a video hearing on Plaintiff's application. (*Id*. at 33–56, 104–105.) On September 12, 2019, the ALJ

issued a decision denying Plaintiff's claim, finding that she was not disabled. (*Id*. at 22–29.) Plaintiff's appeal to the Appeals Council was denied on September 24, 2020. (*Id.* at 5–11.)

Plaintiff filed the Complaint on February 18, 2021, seeking judicial review of the Commissioner's final decision. (Compl., ECF No. 1.) On August 5, 2022, Defendant moved for judgment on the pleadings. (*See* ECF Nos. 14–15.) After the time for Plaintiff's response to the Defendant's motion elapsed, the Court granted a *sua sponte* extension of Plaintiff's deadline to February 3, 2023. (ECF No. 18.) To date, Plaintiff has not filed a response to Defendant's motion. The motion is therefore deemed unopposed and fully briefed.

## II. Factual Background

Plaintiff was born December 1, 1976. (R. at 184.) She completed one year of college in 1996, and in 2002, she worked as a special education paraprofessional. (*Id*. at 48, 207-208.) Plaintiff alleges her disability began February 10, 2016, stemming from hearing loss in the left ear and recurrent pain and limitation in her right foot caused by a previous injury and surgery. (*Id.* at 38, 43, 184, 206.) Plaintiff alleges that she experiences constant pain, numbness and swelling in her right foot, which makes it difficult for her to perform routine tasks and concentrate while at work. (*Id.* at 39, 47.)

### A. Plaintiff's Testimony

During her testimony before the ALJ, Plaintiff noted that she had not worked since 2016 because she could not concentrate due to the pain in her right foot which was constant and worsening. (*Id.* at 38, 43, 184, 206.) Plaintiff testified that the nerve block and injections provided by her previous podiatrist, Dr. Aton Vincetic, were not working. (*Id.* at 41, 45-46.) She also stated that she was being seen at Montefiore Hospital for Post-Traumatic Stress Disorder and related psychological issues resulting from a fear that someone would step on her foot while using public

transportation for travel. (*Id.* at 44, 46.) She denied that the pain she experienced was mild, and insisted that she experienced "constant throbbing pain, and numbness and swelling in her right foot." (*Id.* at 39, 47.) Plaintiff testified that her son is her paid home health aide and supports her for about three days a week with laundry, store runs, medication, and other errands. (*Id.* at 46–47.)

### B. Vocational Expert Testimony

Vocational Expert Frank Fazzolari ("VE") was present at Sweatt's hearing and also offered testimony. (*Id.* at 48.) The ALJ asked the VE to hypothetically consider the potential employment options for an individual of Plaintiff's same age, education, and past work experience, who was able to perform work at the sedentary level of exertion, who could occasionally stoop, or crouch, climb ramps or stairs, but who could not climb ropes or ladders or scaffolds, and had to avoid even moderate exposure to hazards such as moving machinery, parts or unprotected heights. (*Id.* at 51.) The VE determined such a person could perform work as an (1) order clerk, (2) a ticket checker, and (3) a credit clerk. (*Id.* at 51–52.) The VE also testified that if the individual could occasionally balance and could never push or pull with the right lower extremity, or use foot controls with the right lower extremity, the three jobs he identified were still available. (*Id.* at 52.) Finally, regarding the ALJ's hypothetical of an individual being off task due to concentration and pain issues for more than ten percent of a shift, the VE testified that the above mentioned employers generally did not tolerate off-task percentage of more than 10% of a shift (*Id.*)

### C. Medical Evidence

> i.  *Plaintiff's Right Foot Impairment*

Sweatt visited the offices of her podiatrist, Dr. Anto Vincetic on February 29, 2016 with a complaint of right foot pain. (*Id.* at 353.) Dr. Vincetic noted that Plaintiff was in pain and limping "a bit", and upon examination found she had right foot pain in the sub metatarsal joint of the fifth toe. (*Id.* at 353.)

On March 11, 2016, Sweatt underwent a procedure known as an exostectomy to remove a bone growth on her affected foot. (*Id.* at 354; *see also* Def.'s Mem., ECF No. 15 at 4 ns.4–5.) At a subsequent examination on March 18, 2016, Dr. Vincetic found that Sweatt was healing well. (*Id.*) Plaintiff reported feeling better for a time, but said that her right foot had started hurting again after she had dropped a box on it. (*Id.* at 354.) Dr. Vincetic did not see any signs of infection, although he noted that Plaintiff was still experiencing some foot pain. (*Id.*)

At Plaintiff's next visit on May 13, 2016, she saw podiatrist Dr. Dennis Illuzzi, where she reported sharp radiating pain in her right foot. (*Id.* at 355.) She stated that the pain had been present for months and worsened while wearing shoes and walking. (*Id.*) Dr. Illuzzi administered a nerve block and prescribed her Naprosyn. (*Id.*)

Plaintiff returned to Dr. Vincetic's office in October of 2016 and was seen by Dr. Brandon Yee. (*Id.* at 356.) Plaintiff complained again of right foot pain. (*Id.*) Dr. Yee reported that Plaintiff's X-rays showed a deviated right fifth toe. (*Id.*) Dr. Yee noted that Plaintiff had a mild edema of her right foot, no erythema or open lesion, but that she experienced pain when Dr. Yee placed pressure on her right foot. (*Id.*) He assessed that there was pain associated with a neuroma of the fourth intermetatarsal nerve of the right foot and neuritis. (*Id.*)

At a follow up visit on October 24, 2016, Dr. Vincetic reported that Plaintiff had mild edema and mild pain along the fourth metatarsal and fourth interspace. (*Id*. at 357.) Dr. Vincetic applied a strap to Plaintiff's right forefoot and ordered an MRI to rule out a stress fracture. (*Id*.) On her next visit on May 3, 2017, Dr. Vincetic X-rayed Plaintiff's right foot, which did not reveal any fracture. (*Id*. at 358.) He administered a corticosteroid injection to the fourth interspace of Plaintiff's right foot. (*Id*.)

In June 2017, an updated X-ray revealed a non-displaced fracture of her fourth base metatarsal. (*Id*. at 359.) Further examination revealed that Sweatt had mild pitting edema of her right foot and mild pain on applying pressure to the fourth metatarsal and fourth interspace. (*Id*.)

In September 2017, Dr. Vincetic noted that Plaintiff's fracture was healing. (*Id*. at 360.) Further examinations revealed no erythema or open lesion, and she continued to show mild pitting edema and mild palpation along the fourth metatarsal and interspace. (*Id*.) Dr. Vincetic applied strapping and prescribed a compression stocking, Percocet and Medrol. (*Id*.)

Plaintiff's next visited Dr. Vincetic on December 4, 2017. (*Id*. at 361.) At this time, her examination findings were unchanged. (*Id*.) Dr. Vincetic advised no weight bearing on her foot and recommended Radio Frequency Lesioning ("RFL") and nerve decompression. (*Id*.) Sweatt subsequently underwent a RFL procedure on December 23, 2017. (*Id*. at 362.) At Plaintiff's next visit on January 6, 2018 for a post-RFL evaluation, there was no evidence of infection and the surgical areas appeared to be healing well. (*Id*. at 362)

At another visit on April 20, 2018, Plaintiff reported that she had been experiencing pain for the past month in the fourth webspace of her right foot. (*Id.* at 363.) She cited discomfort at rest and during ambulation. (*Id*.) Sweatt also had edema, mild erythema and moderate tenderness to palpation. (*Id*.) There were no signs of infection or trauma. (*Id*.) Dr. Illuzzi also noted that

Plaintiff experienced some nerve tingling with pressure . (*Id.*) X- rays of the right foot showed no fracture, foreign bodies or dislocation. (*Id.*) Dr. Illuzzi assessed neuroma of the fourth webspace of the right foot with secondary pain and difficulty with ambulation. (*Id.* at 363.) He administered a cortisone injection. (*Id.*)

On May 11, 2018, Sweatt reported that the cortisone injection had only helped for a few days. (*Id.* at 364.) Her examination revealed mild edema, mild erythema and moderate tenderness to palpation proximal to the metatarsal head. (*Id.* at 365.) Dr. Illuzzi determined there was intermetatarsal neuroma, neuritis, tendinitis, interosseous muscle tear to be ruled out and secondary pain, and difficulty with ambulation. (*Id.* at 364.) Dr. Illuzzi prescribed Tramadol and referred Plaintiff for an MRI exam. (*Id.*)

In August 2018, Ms. Sweatt began attending podiatrist appointments at New York Presbyterian Hospital. (*Id.* at 293.) X-rays conducted in August revealed a dorsal dislocation of the right fifth metatarsophalangeal ("MTP") joint, mild osteoarthritis of the first MTP joint of the right foot, bilateral second hammertoes, blunted and deficient appearance of the head of the fifth proximal phalanges bilaterally possibly reflecting post-traumatic or post-surgical change. (*Id.*)

Subsequent X-rays performed in October 2018 showed moderate degenerative changes to the first MTP joint that had markedly progressed since August 15, 2018, and unchanged dislocation of the fifth MTP joint. (*Id.* at 295.)

On February 11 2019, an MRI of Plaintiff's right foot was performed to evaluate complaints of pain and assess for possibility of stress reaction or neuroma. (*Id.* at 298.) The MRI showed post-surgical changes of the partial fifth metatarsal head resection with chronic appearing medial and dorsal dislocation at the fifth MTP joint. (*Id.*) A small Morton's neuroma was noted at the second intermetatarsal space. (*Id.*)

> ii. *Plaintiff's Hearing Impairment*

On March 30, 2017, Dr. Joseph Feghali saw Plaintiff at ENT and Allergy Associates for a complaint of "fullness" in her left ear. (*Id.* at 245.) Plaintiff reported that she had sudden hearing loss in her left ear ten days earlier associated with vertigo and tinnitus. (*Id.*) At the time of her appointment, she reported that her imbalance was minimal, and that her hearing was partially improved since first onset, but that she still experienced tinnitus. (*Id.*) Dr. Feghali removed impacted material from Plaintiff's ears. (*Id.* at 247.) A hearing test showed normal hearing in the speech frequencies, but it indicated left-sided hearing loss at high frequencies. (*Id.* at 248, 253.) Dr. Feghali diagnosed Plaintiff with suspected viral labyrinthitis. (*Id.* at 248.) An MRI exam returned unremarkable results. (*Id.* at 248, 256.)

Upon follow-up on April 26, 2017, Plaintiff complained of dyacusis with loud sounds, tinnitus, and decreased hearing in her left ear, but no vertigo. (*Id.* at 257.) Dr. Feghali assessed stable hearing loss in the left ear and unrestricted hearing in the right ear. (*Id.* at 259.) He recommended that Plaintiff protect her left ear from loud noises. (*Id.*) Upon follow-up on June 23, 2017, Plaintiff reported that her dizziness had subsided and that the sense of clogging in her ear had improved. (*Id.* at 265.) Her audiogram results indicated hearing within normal limits with excellent speech discrimination in the right ear. (*Id.*) In her left ear, Plaintiff had hearing within normal limits, sloping to a severe sensorineural hearing loss with excellent speech discrimination. (*Id.* at 265.) Dr. Feghali noted that Plaintiff's hearing test had shown improvement from her previous tests. (*Id.*)

At a follow-up appointment on March 19, 2018, Plaintiff reported mild tinnitus and hearing loss but did not suffer from any imbalance or vertigo. (*Id.* at 334.)

### iii.     Dr. Michael Healy Consultive Examination Report

On December 19, 2017, Dr. Healy performed an internal medicine examination of Plaintiff at the request of the SSA. (*Id*. at 272.) Dr. Healy noted that Plaintiff reported a history of bilateral foot pain with right foot surgery in 2008, with an exacerbation in 2014 that made it difficult for her to walk even one block and perform her activities of daily living. (*Id*. at 272–73.) He noted that she was still able to take care of her personal needs, and she spent her time watching television, listening to the radio, and reading. (*Id*. at 273.)

Upon examination, Dr. Healy concluded that Plaintiff appeared in no acute distress. (*Id.*) She was not using an assistive device, and she did not need help or have any difficulty moving about during the examination. (*Id.*) Plaintiff had full range of motion of her ankles, and her joints were stable and non-tender. (*Id.* at 274.) She could not walk on her heels or toes, and she could squat only 30% of full. (*Id.*) There was no evident muscle atrophy evident or swelling. (*Id.*) Plaintiff's right foot X-rays showed post-surgical changes in her first toe with mild joint space narrowing, and possible surgical changes of the fifth toe with subluxation. (*Id.* at 276.) There was no acute fracture or destructive lesion seen on the X-rays. (*Id.*) Dr. Healy assessed chronic foot pain and inflammatory condition of right greater toe from previous surgery. (*Id.* at 274.) He opined that Plaintiff had mild-to-moderate limitations of standing, walking, and climbing stairs. (*Id.* at 275.)

## LEGAL STANDARDS

### I.     Standard of Review

A district court may review the Commissioner's determination under 42 U.S.C. § 405(g) and can set aside the final decision if there is no "substantial evidence" supporting it or upon the application of an incorrect legal standard. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

Substantial evidence, as set forth in § 405(g), is "more than a mere scintilla" and requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F. 3d 117, 127 (2d Cir. 2008) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). The "substantial evidence" standard is even more deferential than the "clearly erroneous" standard. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). "The Court, however, will not defer to the Commissioner's determination if it is the product of legal error." *DiPalma v. Colvin*, 951 F. Supp. 2d 555, 566 (S.D.N.Y. 2013) (citation and internal quotation marks omitted). The same standard as motion to dismiss for failure to state a claim under Rule 12(b)(6) governs motions for judgment on the pleadings. *Regan v. Kijakazi*, No. 1:21-CV-03534 (ALC), 2022 WL 4592897, at *5 (S.D.N.Y. Sept. 30, 2022). Additionally, given Plaintiff's *pro se* status, the Court is obligated to liberally construe Plaintiff's pleadings and to interpret them to raise the strongest arguments they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

"[T]he Court does not embrace default judgment principles" when a litigant does not oppose a motion for judgment on the pleadings. *Revi v. Comm'r of Soc. Sec.*, No. 16-cv-08521, 2018 WL 1136997, at *18 (S.D.N.Y. Jan. 30, 2018) (quoting *Wellington v. Astrue*, No. 12-cv-3523, 2013 WL 1944472, at *2 (S.D.N.Y. May 9, 2019). When presented with an unopposed motion, the district court "accept[s] the movant's factual assertions as true," but "the moving party must still establish" entitlement under the facts to judgment as a matter of law. *Id.* (internal quotation marks and citations omitted). As a result, the Court must review the adequacy of the factual record before granting an unopposed motion for judgment on the pleadings. *Id.* (citing *Cruz v. Barnhart*, No. 03cv6442, 2004 U.S. Dist. LEXIS 15353, at *3 (S.D.N.Y. July 24, 2004)).

## II. Determining Disability

A plaintiff has a disability if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. § 423 (d)(1)(A). The disability must be serious enough "that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy". 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step process to determine whether a claimant has a disability within the meaning of the Social Security Act. 20 C.F.R. § 404.1520(a)(4). "If the Commissioner determines (1) that the claimant is not working, (2) that he has a severe impairment, (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008) (internal quotations omitted).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four." *Id.* at 128 (internal citations omitted). At step five, however, "the burden shifts to the Commissioner to show that there [are] a significant number of jobs in the national economy that [the claimant] could perform based on his residual functional capacity, age, education, and prior vocational experience." *Butts v. Barnhart,* 388 F.3d 377, 381 (2d Cir. 2004) (citing 20 C.F.R. § 404.1560), *amended on reh'g,* 416 F.3d 101 (2d Cir. 2005); *see also* 20 C.F.R § 404.1520(a)(4)(v).

Under the new regulations for claims filed after March 27 2017, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R § 404.1520c(a). "The regulations explain that when 'evaluating the persuasiveness of medical opinions and prior administrative medical findings, the 'most important factors…are supportability…and consistency.'" *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293 at *1 (2d Cir. June 17, 2022); 20 C.F.R. § 404.1520c(a)). The ALJ must explain how she considered the supportability and consistency factors in her decision, and may, but is not required to, explain her consideration of the other factors. *Id. (*citing 20 C.F.R. §404.1520c(b)(2)). As long as the ALJ's findings are supported by substantial evidence, "the deferential standard of review prevents [the court] from reweighing" them. *Krull v. Colvin,* 669 F. App'x 31, 32 (2d Cir. 2016).

## DISCUSSION

### I.   The ALJ's Decision

On September 12, 2019, the ALJ issued a decision finding that Sweatt had not met her burden of proof to show that she was disabled. (*Id.* at 19.) Applying the five-step sequential evaluation for Social Security disability claims, the ALJ found that at step one that Sweatt had not engaged in substantial gainful activity from February 6, 2016 through her date of last insured of December 31, 2917. (*Id.* at 25.).

At step two, the ALJ found that Sweatt had severe impairments—osteoarthritis and allied disorder related to her foot impairment—which significantly limited her ability to perform basic work activities. (*Id.*). However, the ALJ noted that because her "hearing imbalance is now minimal and the hearing is partially improved…hearing loss has not more than minimally impacted

her ability to perform basic work activities…" (*Id.*) Thus, the ALJ determined that Plaintiff's hearing loss was "non-severe." (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the medical severity of those listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). (*Id.*) The ALJ found that her foot impairment "did not result in an inability to ambulate effectively." (*Id.*)

At the fourth step of the sequential evaluation, the ALJ determined that Plaintiff was unable to do her past relevant work, so he continued to the fifth step of the evaluation. (*Id.* at 27.)

At step five, the ALJ found that Sweatt had the residual functional capacity ("RFC") to perform sedentary work "limited to occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds, never kneel or crawl; occasionally stoop, crouch, or balance; never push/pull or use foot controls with the right lower extremity; and avoid even moderate exposure to hazards such as moving machinery or unprotected heights." (*Id.*) The ALJ then reviewed Plaintiff's age, education and work experience and determined that she could perform the representative occupations of order clerk, ticket checker and credit clerk. (*Id.* at 29.)

## II.   Assessment of the ALJ's Findings

Plaintiff's Complaint alleges that the ALJ's decision was not supported by substantial evidence and was based on legal error. (Compl., ECF No. 1 ¶ 9.) The Commissioner seeks the entry of judgment on the pleadings on the ground that the ALJ's decision is supported by substantial evidence. (*See generally*, Def. Mem., ECF No. 15.) As previously stated, the *pro se* Plaintiff has failed to file any opposition to the Commissioner's motion for judgment on the pleadings. For the reasons outlined below, the Court finds that the ALJ's determination is supported by substantial evidence.

A. The ALJ's Determination that Plaintiff's Hearing Loss Was Non-Severe is Supported by Substantial Evidence

First, the Court concludes that the ALJ's determination that Plaintiff's hearing loss was not severe was supported by substantial evidence. The mere presence of a disease or impairment is not alone sufficient to render a condition severe. *Prince v. Comm'r of Soc. Sec.,* 514 F. App'x 18, 20 (2d Cir. 2013); *Coleman v Comm'r of Soc. Sec.,* 895 F. Supp. 50, 53 (S.D.N.Y. 1995). Evidence of only a slight abnormality that has no more than a minimal effect on the claimant's ability to work is not sufficient to establish a severe impairment. *Rosario v. Commissioner of Soc. Sec.,* No. 97-cv-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (citing *Bowen v Yuckert,* 482 U.S. 137, 154, n.12 (1987)).

Here, the ALJ found there was no evidence that Plaintiff's hearing loss—which only affected her left ear at high frequencies—resulted in any significant functional limitations. Specifically, the ALJ observed that although Plaintiff reported a sudden hearing loss in her left ear in March 2017, associated with vertigo and tinnitus, "the imbalance is now minimal and the hearing is partially improved." (R at 25, 257.) The ALJ noted that Plaintiff's audiology testing showed normal hearing in her right ear with excellent speech discrimination, and only some hearing loss at high frequencies in her left ear along with excellent speech discrimination. (*Id.* at 25, 248, 253, 265, 337.) For these reasons, the ALJ's determination is supported by substantial evidence in the record.

B. The ALJ's RFC Determination was Supported by Substantial Evidence

Next, the Court finds that the ALJ properly determined Plaintiff's RFC based on her foot impairment. The RFC determination is "the most [a claimant] can still do despite [her] limitations," and is based upon all the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ's RFC findings must "afford an adequate basis for

13

meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (internal quotations omitted).  The relevant regulations require an ALJ to weigh medical opinions based on the factors discussed in *Burgess*: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, but the ALJ need only explicitly explain how the first two factors were considered.  *Burgess*, 537 F.3d at 127; 20 C.F.R. § 404.1520c(b)(2).

The ALJ determined that Plaintiff had the RFC to perform sedentary work with limitations on climbing ramps and stairs, stooping, crouching, crawling and balancing, additionally noting that she could not climb ladders, ropes or scaffolds, kneel, crawl, or push or pull foot controls with her right leg and that she was to avoid moderate exposure to hazards such as moving machinery or unprotected heights. (R. at 25.)  This determination is supported by the medical opinion of Dr. Healy, who opined that Plaintiff had only mild to moderate limitations of standing, walking and climbing stairs, which was consistent with a reduced range of sedentary work. (*Id.* at 27.)  The ALJ noted that Dr. Healy's opinion was supported by his examination notes. (*Id.*)  The ALJ also noted that while Dr. Healy found that Plaintiff had an antalgic gait, could not walk on her toes, and could only do 30% of a squat, Dr. Healy also found that Plaintiff did not use an assistive device, and needed no help moving around during the examination. (*Id.*)  The ALJ's RFC determination was also consistent with the rest of the evidence in the record, which shows that Plaintiff was experiencing only mild pain in her right foot and that following surgery in December 2017, told her physicians that she "feels better". (*Id*. 26, 27, 354, 356–62.)

Finally, substantial evidence also supports the ALJ's finding that there were a number of jobs in the national economy that were suitable for Plaintiff to perform. (*Id*. at 29.)  The ALJ relied

on the VE's findings regarding this assessment, which an ALJ may do where this is substantial evidence on which the VE's determination was based. *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

For these reasons, the ALJ's final decision satisfies the burden under the "very deferential" substantial evidence standard. *Brault*, 683 F.2d at 448; *see also Johnson v. Astrue*, 563 F.Supp.2d 444, 454 (S.D.N.Y. June 26, 2008) ("If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists"). Accordingly, Defendant's motion for judgment on the pleadings is granted.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings is **GRANTED**, and the ALJ's decision is **AFFIRMED**. The Clerk of Court is respectfully requested to terminate the pending motion at ECF No. 14 and close this case.

**SO ORDERED.**

**Dated:** **March 21, 2023**
**New York, New York**

*[signature: Andrew L. Carter, Jr.]*

**ANDREW L. CARTER, JR.**
**United States District Judge**